UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| EDDY L. HAMILTON | CIVIL ACTION NO. 17-cv-202 |
|---|---|
| VERSUS | JUDGE ELIZABETH ERNY FOOTE |
| STORER EQUIPMENT CO., LTD. | MAGISTRATE JUDGE HORNSBY |

## MEMORANDUM RULING

Plaintiff Eddy Hamilton ("Hamilton") has raised Title VII claims against his former employer, Storer Equipment Co., Ltd., alleging that his termination was racially motivated and that Defendant provided negative references to prospective employers in retaliation for Hamilton's charge with the Equal Employment Opportunity Commission ("EEOC"). [Record Document 1]. Defendant has moved for summary judgment on all claims. [Record Document 27]. Because the record, when read most favorably to Hamilton, reveals open questions of material fact regarding Defendant's motivation, the motion is **DENIED** as to Hamilton's discriminatory termination claim, but **GRANTED** as to the retaliation claim.

### I. Background

Defendant is a company engaged in the sale, installation, and maintenance of heating, ventilation, and air conditioning ("HVAC") products. [Record Document 27-6 at 1]. On the basis of his years of experience in accounting positions and three interviews, Hamilton was hired by Defendant as an Accounting Specialist in January 2013. [Record Document 27-4 at 9–12]. At Defendant's instruction, he completed a behavioral assessment prior to being hired. [*Id.* at

1

11, 34–55]. The assessment specifically noted that he would require "clearly stated guidelines" and that he would only acquire more independence if allowed to make mistakes and then given "immediate constructive feedback." [*Id.* at 48, 52].

Hamilton primarily handled accounts receivable, particularly older outstanding accounts. [Record Documents 27-4 at 12 and 27-6 at 1]. To collect on the accounts, Hamilton would research the account and then confer with managers so that he could adequately understand the account before contacting the customer. [Record Document 27-4 at 15]. When collecting severely past due accounts, Hamilton's supervisor, Robert Bundrick ("Bundrick") instructed him to have a manager or the CEO, Craig Storer ("Storer"), contact the customer. [*Id.* at 12–13].

One of the managers with whom Hamilton interacted was Eddie Conrad ("Conrad"), the manager of Defendant's parts department. [Record Document 27-10 at 1]. Hamilton alleges that Conrad unfairly criticized him and "instituted a pattern of yelling at [him] and denigrating his race." [Record Document 1 at 2]. Conrad made at least two racially inflected remarks: (1) that black people ate chitlings and (2) that Conrad was pulled over by police for driving in a black neighborhood because he was assumed to be a drug dealer. [Record Document 27-4 at 15]. Hamilton also complains that Conrad mocked his speech patterns. [*Id.*]. More generally, Hamilton accuses Conrad of calling him "incompetent," a fact that Conrad effectively admits. [Record Documents 27-4 at 16–17 and 27-10 at 1]. Although Conrad asserts that his frustration with Hamilton arose from the latter's unwillingness to resolve customer complaints on his own, Hamilton denies that Conrad showed him how to use Defendant's computer system to answer the questions that he would bring to Conrad and testified that he was specifically instructed to

2

bring certain problems to management. [Record Documents 27-4 at 13, 16 and 27-10 at 1]. Hamilton also experienced conflict with another employee, Deegie Lawless ("Lawless"), who received complaints regarding Plaintiff's inability to communicate clearly with customers and his crediting of payments to the wrong accounts; she reported these complaints to Storer. [Record Document 27-9 at 1]. Both Conrad and Lawless yelled at Hamilton regarding his performance. [Record Document 27-4 at 16, 19].

In March 2014, Defendant lost an important franchise with Trane, a leading provider of HVAC equipment. [Record Document 27-6 at 2]. By the end of the year, Defendant had reduced its employee headcount through a combination of resignations, retirements, involuntary terminations for cause, and involuntary terminations due to a reduction in force ("RIF"). [Record Document 27-8 at 5]. Despite the loss of the Trane franchise, Storer sent emails to all company personnel in June, September, and October 2014 touting the company's positive future prospects. [Record Document 29-1 at 5–7]. The September email mentions seven new hires; the October email describes an eighth. [*Id.* at 6–7]. In September, Storer claimed the company was "in a great position" and in October specifically noted, "our backlog in contracting is in excess of $2.5 million dollars and growing." [*Id.*]

After consultation with Bundrick and Defendant's human resources director, Storer decided to involuntarily terminate Hamilton in December 2014 as part of a RIF. [Record Document 27-6 at 2]. Storer selected Hamilton because he "did not have the disposition for aggressively collecting past due accounts" and "demonstrated an inability or unwillingness to do the research necessary to understand collection issues and resolve them." [*Id.*]. In support of

Hamilton's termination, Bundrick points to a particular metric: the average monthly "Days Sales Outstanding" ("DSO"), which tracks the number of days delinquent accounts have been overdue. [Record Documents 27-5 at 11 and 27-7 at 2–3]. The DSO reached its peak in 2014. [Record Document 27-7 at 2]. Bundrick and Lawless also testified that Hamilton made errors such as incorrectly crediting funds received. [Record Documents 27-5 at 5 and 27-9 at 1]. After Hamilton was discharged, Lawless assumed his duties. [Record Document 27-6 at 2].

Following his termination, Hamilton listed Bundrick as a reference when applying for accounting positions at other companies. [Record Document 27-4 at 23]. Hamilton also filed a charge of discriminatory termination with the EEOC, which issued notice of the charge to Defendant on January 14, 2015. [Record Document 29-2 at 8]. After interviewing Hamilton, Wholesale Pump and Supply ("Wholesale") contacted Bundrick for a reference. [Record Documents 27-4 at 23 and 27-5 at 8–9].[1] When Wholesale did not extend a job offer, Hamilton hired a reference check service, which contacted Bundrick on March 9, 2015. [Record Document 27-4 at 23–24, 70–73]. Out of fourteen items scored on a scaled of one to five about which the service inquired, Bundrick gave only one rating lower than a three; he also explicitly stated that he would rehire Hamilton though not necessarily in the same position. [*Id.* at 70, 72]. Bundrick has testified that the reference he gave to Wholesale was substantially identical to the comments he made when speaking to the reference check service. [Record Document 27-5 at 8–9]. Believing that the service's report of Bundrick's comments indicated that Bundrick had given a negative reference to Wholesale, Hamilton amended his EEOC charge to add a

---

[1] The record is unclear, but Bundrick may have spoken to a second prospective employer. [Record Document 27-4 at 24].

retaliation claim. [Record Document 29-2 at 13].

After the EEOC issued a right-to-sue letter, Hamilton filed the instant suit. [Record Documents 1 and 1-1]. Following discovery, Defendant moved for summary judgment. [Record Document 27]. Because Hamilton has responded and Defendant has replied, this matter is ripe for adjudication. [Record Documents 29 and 30].

## II. Law and Analysis

### A. Summary Judgment Standard

Federal Rule of Civil Procedure 56(a) directs a court to "grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[2] Summary judgment is appropriate when the pleadings, answers to interrogatories, admissions, depositions, and affidavits on file indicate that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). When the burden at trial will rest on the non-moving party, the moving party need not produce evidence to negate the elements of the non-moving party's case; rather, it need only point out the absence of supporting evidence. *See id.* at 322–23. However, "if the movant bears the burden of proof on an issue, . . . he must establish beyond peradventure *all* of the essential elements of the claim or defense to warrant judgment in his favor." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986).

---

[2] Rule 56 was amended effective December 1, 2010. Per the comments, the 2010 amendment was intended "to improve the procedures for presenting and deciding summary judgment motions and to make the procedures more consistent with those already used in many courts. The standard for granting summary judgment remains unchanged." Therefore, the case law applicable to Rule 56 prior to its amendment remains authoritative, and this Court will rely on it accordingly.

5

If the movant satisfies its initial burden of showing that there is no genuine dispute of material fact, the nonmovant must demonstrate that there is, in fact, a genuine issue for trial by going "beyond the pleadings" and "designat[ing] specific facts" for support. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (citing *Celotex*, 477 U.S. at 325). "This burden is not satisfied with some metaphysical doubt as to the material facts," by conclusory or unsubstantiated allegations, or by a mere "scintilla of evidence." *Id.* (internal quotation marks and citations omitted). However, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1985) (citing *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 158–59 (1970)). While not weighing the evidence or evaluating the credibility of witnesses, courts should grant summary judgment where the critical evidence in support of the nonmovant is so "weak or tenuous" that it could not support a judgment in the nonmovant's favor. *Armstrong v. City of Dall.*, 997 F.2d 62, 67 (5th Cir. 1993).

Additionally, Local Rule 56.1 requires the movant to file a statement of material facts as to which it "contends there is no genuine issue to be tried." The opposing party must then set forth a "short and concise statement of the material facts as to which there exists a genuine issue to be tried." W.D. La. R. 56.2. All material facts set forth in the movant's statement "will be deemed admitted, for purposes of the motion, unless controverted as required by this rule." *Id.*

B. <u>Hostile Work Environment</u>

Defendant represents that Hamilton's EEOC charge mentioned that Conrad's behavior created a hostile work environment, but argues that any hostile work environment claim fails as

a matter of law. [Record Document 27-3 at 16–17]. Hamilton's complaint asserts only two causes of action: discriminatory termination and retaliation. [Record Document 1]. The Court finds that Hamilton has alleged facts regarding Conrad's racist jokes not to support a freestanding hostile work environment claim, but rather to establish a racially discriminatory motivation for Defendant's termination decision. As there is no hostile work environment claim pleaded, there is no hostile work environment claim to dismiss.

C. <u>**Discriminatory Termination**</u>

An employer may not "discharge any individual . . . because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1) (2012). Where, as in the instant case, a plaintiff offers only circumstantial evidence of discrimination, the three-step *McDonnell Douglas* framework applies. *Wallace v. Methodist Hosp. Sys.*, 271 F.3d 212, 219 (5th Cir. 2001); *see McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–04 (1973). To survive summary judgment in an employment discrimination case based on circumstantial evidence, a plaintiff must first establish a prima facie case of discrimination. *Manning v. Chevron Chem. Co.*, 332 F.3d 874, 881 (5th Cir. 2003). If the plaintiff does so, the employer must produce a legitimate, non-discriminatory reason for the challenged employment decision. *Haire v. Bd. of Supervisors of La. State Univ. Agric. & Mech. Coll.*, 719 F.3d 356, 362–63 (5th Cir. 2013) (citing *Manning*, 332 F.3d at 881). If the employer produces such an explanation, the plaintiff must then demonstrate that the employer's reason is pretextual, *McDonnell Douglas*, 411 U.S. at 804, or else that discriminatory animus was a "motivating factor" in the employer's decision, *Desert Palace, Inc. v. Costa*, 539 U.S. 90, 101–02 (2003) (citing 42 U.S.C. § 2000e-2(m)). In the latter case, the burden

shifts back to the employer to show that it would have taken the same action in the absence of the impermissible motivation. *Id.* at 93, 95 (citing 42 U.S.C. § 2000e-5(g)(2)(B) (2012); *Price Waterhouse v. Hopkins*, 490 U.S. 228, 244 (1989)).

A prima facie case for discriminatory termination requires a Title VII plaintiff to show that she:

> (1) is a member of a protected group; (2) was qualified for the position at issue; (3) was discharged or suffered some adverse employment action by the employer; and (4) was replaced by someone outside h[er] protected group or was treated less favorably than other similarly situated employees outside the protected group.

*Willis v. Cleco Corp.*, 749 F.3d 314, 320 (5th Cir. 2014) (quoting *McCoy v. City of Shreveport*, 492 F.3d 551, 556 (5th Cir. 2007)). Here, Hamilton is African-American and thus within a protected class. Hamilton's years of experience in accounting positions establish his qualifications, a fact that Defendant does not dispute. Hamilton's firing satisfies the third element.

Defendant admits that Lawless, a white woman, assumed Hamilton's duties. [Record Document 27-6 at 2]. While Bundrick's uncontroverted testimony is that restructuring resulted in one fewer employee in the accounting department than was the case while Hamilton was employed, [Record Document 27-5 at 2], Defendant does not argue that this negates Hamilton's prima facie case. Given the need on summary judgment to draw inferences in a plaintiff's favor, *Anderson*, 477 U.S. at 255 (citing *Adickes*, 398 U.S. at 158–59), the Court infers that Hamilton was replaced by Lawless, a person outside of his class, and thus that he has established his prima facie case.

Defendant has articulated two interrelated explanations for Hamilton's discharge: the RIF and Hamilton's poor performance in his duties. [Record Document 27-3 at 14–15]. Because the

loss of an important franchise would justify a RIF and because the increasing DSO and reports of Hamilton misapplying funds support Defendant's claim that Hamilton was a weak performer, the Court finds that Defendant has adequately articulated a legitimate, non-discriminatory reason for Hamilton's discharge.

To rebut the charge that Defendant's financial condition required a RIF, Hamilton points to Storer's emails celebrating recent successes. [Record Document 29-1 at 5–7]. Taken together and read in the light most favorable to Hamilton, these emails could establish that Defendant was economically healthy at the time of Hamilton's termination despite the loss of the Trane franchise. Therefore, the Court finds that a fact question prevents summary judgment on Defendant's claim that a RIF justified Hamilton's termination.

However, to survive summary judgment, a Title VII plaintiff must rebut each of her employer's proffered nondiscriminatory reasons. *Wallace*, 271 F.3d at 220 (citing *Rubinstein v. Adm'rs of Tulane Educ. Fund*, 218 F.3d 392, 400–01 (5th Cir. 2000); *Rutherford v. Harris Cty.*, 197 F.3d 173, 184 (5th Cir. 1999)). Thus, Hamilton must call into question the legitimacy of Defendant's explanation that Hamilton was a weak performer. Hamilton argues that he had "reduced the back money owed" by Defendant's customers and concludes that his success in doing so logically decreased the amount of money he was collecting by late 2014. [Record Documents 29 at 5 and 29-2 at 10]. What he has not successfully done is articulate how his alleged success in retiring old accounts explains the increasing DSO. Moreover, he offers no evidence to counter Bundrick's and Lawless's testimony that he misapplied funds received.

[Record Documents 27-5 at 5 and 27-9 at 1].³ He therefore has failed to show pretext.

Even if his performance was somewhat lacking, Hamilton can still survive summary judgment if race was a motivating factor in his termination. *See Desert Palace*, 539 U.S. at 101–02 (citing 42 U.S.C. § 2000e-2(m)). To support his claim that Defendant allowed a racially insensitive environment to exist at the workplace, Hamilton offers the declaration of Demetrius Norman ("Norman"), a former black employee of Defendant. [Record Document 29-2 at 14]. Norman describes his fellow employees openly denigrating President Obama and laughing at him while discussing the "problems" of black people. [*Id.*]. Norman was also instructed to avoid looking Storer in the eye in order to show "respect." [*Id.*]. Defendant argues that the Court should disregard Norman's declaration because Norman was never identified as a potential fact witness and because consideration of Norman's allegations would "unnecessarily result in a 'trial within a trial' on irrelevant claims involving different supervisors." [Record Document 30 at 5]. However, Norman's testimony, to which a jury is free to give as much or as little weight as it wishes, is relevant because it supports Hamilton's claim that racial animus was a partial motivation for his discharge. Therefore, the Court will consider Norman's declaration for that purpose.

Conrad's comments and behavior did not create an environment hostile enough to violate Title VII, but they do support Hamilton's claim that race motivated his firing. Conrad's

---

³Although Hamilton has presented evidence that white employees also made errors while in Defendant's employ, [Record Document 29-1 at 2–3], he has neither demonstrated that they were not disciplined for those errors nor that the white employees' circumstances were "nearly identical," *Love v. Kan. City S. Ry.*, 574 F.3d 253, 260 (5th Cir. 2009). Without accompanying evidence of differential treatment, evidence of white employees' mistakes is irrelevant.

predecessor did not react to Hamilton with the same degree of negativity as did Conrad, suggesting that Hamilton was not as poor a performer as Conrad believed him to be. [Record Document 27-4 at 15]. Although Conrad avers that he or a member of his team taught Hamilton how to research the answers to customers' questions, Hamilton disputes this contention. [Record Documents 27-4 at 16 and 27-10 at 1]. Given this dispute of fact, the Court must infer that Hamilton was not trained to research in the manner Conrad desired. Conrad's admission to calling Hamilton incompetent[4] for failing to do something that he had not been trained to do suggests that Conrad's negative interactions with Hamilton were not solely attributable to the latter's work product. Even though Conrad was not Hamilton's supervisor, a jury could conclude that Conrad's criticism played a role in Storer's decision to fire Hamilton. [Record Document 27-6 at 2].

Although Defendant now claims to have been dissatisfied with Hamilton's performance, Defendant cannot claim to have been surprised by it. The behavioral assessment that Hamilton completed prior to his hiring clearly indicated that he would require assistance to develop confidence and competence in navigating work situations lacking clear rules and expectations. [Record Document 27-4 at 48, 52]. The assessment even specifically recommended constructive feedback. [*Id.* at 52]. On the basis of this assessment, a jury could infer that Defendant knew, at time it hired Hamilton, that he would struggle with certain types of tasks. A jury could then infer that Defendant's use of those struggles to justify Hamilton's termination suggests an admixture

---

[4] Although Conrad admits only that he "may" have called Hamilton incompetent, [Record Document 27-10 at 1], because the Court must make inferences in Hamilton's favor, the Court can take as summary judgment fact that Conrad did call Hamilton incompetent.

11

of discriminatory animus in the termination decision.

Defendant places great weight upon the fact that the DSO in 2014 reached the highest level it ever had. [Record Documents 27-5 at 11 and 27-7 at 2–3]. However, Defendant's data shows that the DSO was 39 days in 2013, 53 days in 2014, 49 days in 2015, 50 days in 2016, and 46 days in 2017. [Record Document 27-7 at 3]. While it is clear that the DSO reached its highest level during Hamilton's final year of employment, it remained relatively high in the following years. From this a jury could conclude that the increase in the DSO in 2014 was due to factors other than Hamilton's performance. Given the existence of this pattern in the DSO data, Hamilton and Norman's testimony as to a racially insensitive environment, and Conrad's attitude towards Hamilton, Hamilton has raised a question of fact regarding whether racial animus was impermissibly mixed into the discharge decision.

Although Defendant must be given an opportunity to show that it would have made same decision even without a discriminatory motive, its burden on this element is "effectively that of proving an affirmative defense." *Machinchick v. PB Power, Inc.*, 398 F.3d 345, 355 (5th Cir. 2005). To obtain summary judgment on an affirmative defense, a defendant must establish her entitlement to relief "beyond peradventure." *Fontenot*, 780 F.2d at 1194. In light of evidence regarding a racially insensitive environment at the company as well as the fact that the reasons for which Hamilton was ultimately discharged were known to Defendant when he was hired, the Court cannot conclude that Defendant has carried its burden at this stage. Therefore, Defendant's motion is denied on Hamilton's discriminatory termination claim.

D.   **Retaliation**

Hamilton alleges that after he filed his EEOC charge, Bundrick began giving negative references when contacted by Hamilton's prospective employers. [Record Document 1 at 3–4]. Defendant insists that Bundrick's comments were not negative. [Record Document 27-3 at 19]. Hamilton responds that the perception created by Bundrick's unenthusiastic endorsement was the equivalent of a negative reference. [Record Documents 29 at 8 and 29-2 at 13].

Hamilton's retaliation claim employs the same burden-shifting framework as his discriminatory termination claim. *See McCoy*, 492 F.3d at 556 (citing *McDonnell Douglas*, 411 U.S. at 802). A prima facie retaliation case requires: (1) participation in an activity protected by Title VII; (2) an adverse employment action; and (3) a causal connection between the protected activity and the adverse action. *Id.* at 556–57. Protected activity includes making an EEOC charge. 42 U.S.C. § 2000e-3(a) (2012). A negative reference is an adverse employment action for purposes of a Title VII retaliation claim. *Fields v. Phillips Sch. of Bus. & Tech.*, 870 F. Supp. 149, 153 (W.D. Tex. 1994), *aff'd sub nom. Fields v. Phillips Sch. of Bus.*, 59 F.3d 1242 (5th Cir. 1995) (per curiam) (unpublished). Although the ultimate burden of persuasion in a Title VII retaliation case is to prove that the protected activity was the "but for" cause of the adverse employment action, *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 362 (2013), the Fifth Circuit has not clarified whether evidence of "but for" causation is required in the first or in the third *McDonnell Douglas* step. Fifth Circuit panels have adopted both approaches. *Compare Alkhawaldeh v. Dow Chem. Co.*, 851 F.3d 422, 427 (5th Cir. 2017) ("but for" causation required to establish pretext), *reh'g denied* (Apr. 27, 2017); *Outley v. Luke & Assocs., Inc.*, 840 F.3d 212, 219 (5th Cir. 2016) (same); *Feist v.*

*La., Dep't of Justice, Office of the Attorney Gen.*, 730 F.3d 450, 454 (5th Cir. 2013) (same) *with Wheat v. Fla. Par. Juvenile Justice Comm'n*, 811 F.3d 702, 710 (5th Cir. 2016) ("but for" causation discussed as part of prima facie case); *Brandon v. Sage Corp.*, 808 F.3d 266, 270 (5th Cir. 2015) (same). As the Third Circuit has noted, to require evidence sufficient to raise a fact question as to "but for" causation at the prima facie stage would render the entire *McDonnell Douglas* framework redundant, a result that the Supreme Court could not have intended to create by mere implication. *See Carvalho-Grevious v. Del. State Univ.*, 851 F.3d 249, 258–59 (3d Cir. 2017) (citing *Foster v. Univ. of Md.-E. Shore*, 787 F.3d 243, 251 (4th Cir. 2015)). In the absence of clear guidance from the Fifth Circuit, the Court will assume that Hamilton must produce evidence of "but for" causation to demonstrate pretext and that his burden at the prima facie stage is correspondingly lower.

By filing his EEOC charge, Hamilton engaged in protected activity, thereby satisfying the first element of his prima facie case. Although Bundrick's evaluation of Hamilton's job performance can best be described as neutral, a jury could conceivably find that an evaluation that damns with faint praise is functionally negative. Therefore, the Court will infer that Hamilton experienced an adverse employment action.

A Title VII plaintiff can establish the causal connection prong of the prima facie case by showing temporal proximity between the protected activity and the adverse employment action. *Feist*, 730 F.3d at 454 (citing *McCoy*, 492 F.3d at 562)). The Fifth Circuit has held that an adverse employment action within four months of a protected activity suffices. *Evans v. City of Hous.*, 246 F.3d 344, 354 (5th Cir. 2001) (citing *Weeks v. NationsBank, N.A.*, No. CIV.A 3:98-CV-1352M,

2000 WL 341257, at *3 (N.D. Tex. Mar. 30, 2000)). Because fewer than three months elapsed between the EEOC's notice to Defendant of Hamilton's charges and Bundrick's final reference, Hamilton has established his prima facie case. [Record Documents 27-4 at 73 and 29-2 at 8].

Defendant articulates a legitimate, nondiscriminatory reason for Bundrick's statements: Hamilton's performance as an employee. Bundrick, Lawless, Conrad, and Storer have all attested to their dissatisfaction with Hamilton's work performance. Although Bundrick testified that he never made any notations in Hamilton's file of any of the times in which Hamilton allegedly misapplied payments or was the subject of customer complaints, [Record Document 27-5 at 5–6], a defendant's burden on summary judgment is not a burden of persuasion—the evidence presented must merely be enough evidence that "if true, would permit the conclusion that the adverse employment action was nondiscriminatory," *Long v. Eastfield Coll.*, 88 F.3d 300, 305 (5th Cir. 1996) (citing *McMillan v. Rust Coll., Inc.*, 710 F.2d 1112, 1116 (5th Cir. 1983)). Therefore, the Court holds that Defendant has satisfied its summary judgment burden to support its articulated nondiscriminatory reason.

The burden now shifts back to Hamilton to "establish[] pretext by showing that the adverse action would not have occurred 'but for' the employer's retaliatory reason for the action." *Hague v. Univ. of Tex. Health Sci. Ctr. at San Antonio*, 560 F. App'x 328, 336 (5th Cir. 2014) (citing *Nassar*, 570 U.S. at 360–62). He must do so with "substantial evidence"—that is, evidence of "such quality and weight that reasonable and fair minded [persons] in the exercise of impartial judgment might reach different conclusions." *Hernandez v. Yellow Transp., Inc.*, 670 F.3d 644, 658 (5th Cir. 2012) (quoting *Long*, 88 F.3d at 308). Given this standard, "self-serving, generalized

testimony stating [a] subjective belief that discrimination occurred is insufficient to support a retaliation claim." *Fields*, 870 F. Supp. at 153–54 (citing *Grizzle v. Travelers Health Network, Inc.*, 14 F.3d 261, 268 (5th Cir. 1994)). Notably, in the cases where the Fifth Circuit has found that a plaintiff satisfied her burden at the third *McDonnell Douglas* step, the plaintiff's evidence reveals a decisive change in the employer's behavior following the protected activity. For instance, the Fifth Circuit has found substantial evidence of retaliation in a sudden and unexplained change in the employee's performance evaluations, *Medina v. Ramsey Steel Co.*, 238 F.3d 674, 685 (5th Cir. 2001); *Long*, 88 F.3d at 308, in similar retaliatory behavior toward other employees who engaged in the same protected activity, *Hague*, 560 F. App'x at 336, or in inconsistent explanations for an adverse employment action, *id.* at 336–37.

Here, Bundrick has asserted his belief that he provided Hamilton with a favorable reference based on his honest assessment of Hamilton's performance. [Record Documents 27-5 at 9–10 and 27-7 at 2]. Hamilton claims that Bundrick "always complimented me on my work," [Record Document 29-2 at 13], but has pointed to no individual incidents that would establish a pattern of behavior from which Bundrick deviated when giving the reference. Moreover, much of the reference was, in fact, complimentary. [Record Document 27-4 at 72]. Because Hamilton has not provided evidence supporting his assertion that Bundrick's opinion of him suddenly changed, Hamilton's evidence is insufficient to show pretext under the Fifth Circuit's "substantial evidence" standard. Therefore, the Court grants Defendant's motion on Hamilton's retaliation claim.

### III. Conclusion

For the reasons given above, Defendant's motion for summary judgment [Record Document 27] is **GRANTED IN PART** and **DENIED IN PART**. The motion is **GRANTED** as to Hamilton's retaliation claim, but **DENIED** as to his discriminatory termination claim.

**IT IS ORDERED** that Hamilton's retaliation claim is **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER ORDERED** that a telephone status conference is set for Tuesday, June 26, 2018 at 1:30 p.m. to discuss the scheduling of the pretrial conference and the trial. The Court has a conflict with the existing pretrial date, and a four-week criminal trial is set to begin the week before trial in this matter is set. Counsel for Defendant shall initiate the call, and all trial counsel must participate. The use of cell phones is prohibited.

**THUS DONE AND SIGNED** in Shreveport, Louisiana, on this 18th day of JUNE, 2018.

ELIZABETH ERNY FOOTE
UNITED STATES DISTRICT JUDGE